Jonathan R. Doolittle (SBN 290638)
Email: jdoolittle@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorney for General Electric Capital Corporation, a Delaware Corporation

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>RHINO BUSINESS SYSTEMS, INC. a California corporation,<br><br>Defendant. | No.: 2:16-cv-00029-KJM-CMK<br><br>**PLAINTIFF'S MOTION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:         March 25, 2016<br>Time:        10:00 a.m.<br>Courtroom:  3<br><br>Honorable Kimberly J. Mueller<br><br>Complaint. Filed: January 5, 2016<br>Trial Date: None |

    Plaintiff General Electric Capital Corporation ("Plaintiff") hereby moves, pursuant to Calif. Code of Civ. Proc. § 483.010 *et seq.*, made applicable to this proceeding pursuant to Rule 64 of the Federal Rules of Civil Procedure, for entry of a right to attach order, a writ of attachment, and an order directing the Defendant Rhino Business Systems, Inc., a corporation organized under the laws of the State of California ("Defendant") to transfer to the levying officer possession of any property in Defendant's possession subject to attachment. As set forth more fully in the Memorandum of

– 1 –  US_ACTIVE-125090546.1-JRDOOLIT

Points and Authorities herein, Plaintiff seeks a writ of attachment in the amount of $477,527.23 against all non-exempt assets of Defendant to secure recovery on a claim upon which attachment may issue, and for no other purpose other than the recovery of such claim. Plaintiff has no information or belief that its claim has been discharged or that the prosecution of this action is stayed by a proceeding under title 11 of the United States Code.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

On October 20, 2011, Plaintiff and Rhino Business Systems, Inc. ("Defendant") entered into a Strategic Alliance Agreement (the "Agreement"), pursuant to which Plaintiff agreed to provide financing for certain persons or entities (each, a "Customer") that intended to purchase or lease office equipment (each, a "Transaction") from Defendant. While Plaintiff entered into financing transactions with each Customer, Defendant indemnified Plaintiff with regard to each such transaction (defined below).

As stated more fully in the Complaint filed herein (the "Complaint"), Plaintiff has since become aware that Defendant breached its warranties and representations under the Agreement by, among other things: (i) upgrading and refinancing, through a source other than Plaintiff, certain Transactions without Plaintiff's knowledge or consent, and (ii) failing to comply with the "Buyout to Keep" and similar provisions, as that terminology is used in section 2(k) of the Agreement, with respect to various Transactions.

In addition, Defendant has taken actions that have caused and/or encouraged the Customers under the Indemnified Accounts to breach their own contractual obligations to Plaintiff. Such actions include: (i) advising the Customers that Defendant would fulfill Customers' obligations to Plaintiff under such contracts, (ii) erroneously advising the Customers that their obligations to Plaintiff were forgiven, and (iii) permitting Customers to "return" Equipment to Defendant without compensating Plaintiff for the value of the same. Defendant received substantial fees, commissions and payments as a direct result of its improper and unlawful conduct.

Prior to commencing this action, Plaintiff demanded that Defendant fulfill its indemnification obligations to Plaintiff under the Agreement, but Defendant has failed and refused to do so. As a result, Plaintiff files the above-captioned litigation seeking not less than $477,527.23 in damages from Defendant. Defendant was served with a copy of the Complaint and a summons to appear in the above-captioned litigation on January 20, 2016. To date, however, Defendant has neither appeared nor filed any written response to the Complaint.

Recently, Plaintiff received information that suggests that Defendant has sold, or soon intends to sell, substantially all its assets to Ray Morgan RMC, Inc. ("Morgan"). Plaintiff is further informed and believes that Morgan has also instructed certain Customers that they need not satisfy their obligations to Plaintiff. As such, Plaintiff anticipates that the damages incurred by Plaintiff as a result of Defendants' conduct will increase. At the same time, Plaintiff understands that Defendant has either ceased, or will soon cease, operating its business as a going concern and has liquidated its assets. The facts presently known to Plaintiff raise definite and non-speculative concerns that Defendant will be unable to satisfy any judgment against it. Indeed, as a result of the sale, the only asset that likely will remain to satisfy any judgment is proceeds from the sale.

Given the unambiguous contract between Plaintiff and Defendant, coupled with Defendant's breaches, Plaintiff's claim meets the "probable validity" standard required to secure a writ of attachment. Specifically, Plaintiff seeks a writ of attachment to ensure Defendant has funds available to satisfy this debt. Because Plaintiff meets the procedural and statutory requirements necessary for the issuance of a writ, Plaintiff respectfully requests that this Court grant this motion for a right to attach order and writ of attachment

**STATEMENT OF FACTS**

The facts set forth herein are supported by the various loan documents attached to the Complaint, and the Declaration of Anthony Janney in Support of Plaintiff's Motion for Right to Attach Order and Writ of Attachment (the "Janney Declaration"). Mr. Janney is a Litigation Specialist for Plaintiff.

Defendant and Plaintiff are parties to the Agreement, pursuant to which Plaintiff agreed, among other things, to provide financing for certain Customers of Defendant. Pursuant to section 4

of the Agreement, Defendant represented and warranted, among other things, that, with respect to each Transaction: (a) neither Defendant, nor any of its employees or agents, was aware of: (i) any fact or circumstance that would reasonably have a negative impact on that Transaction, the equipment leased or sold in connection therewith (the "Equipment"), or the financial condition or business of the applicable Customer, or (ii) any fraudulent activity on the part of the applicable Customer in connection with the Transaction or the Equipment; and (b) neither Defendant nor any of its employees or agents had committed any fraudulent act nor participated in any fraudulent or improper activity in connection with the applicable Customer or that Transaction. *Agreement,* § 4(c)-(d).

In addition, Defendant warranted that, with regard to each Transaction, Defendant would "not exchange or accept the return of the Equipment or amend, release or discharge any Customer obligation under the Transaction without [Plaintiff's] prior written consent." *Id.,* § 2(b).

Pursuant to Section 6 of the Agreement, Defendant agreed to hold Plaintiff and its affiliates harmless from any and all losses, claims or expenses of Plaintiff "arising out of or in connection with (1) any breach by [Defendant] of any of its representations and warranties [under the Agreement],…[and] (3) the sale, delivery, installation, use, possession, servicing, maintenance or disposal of the Equipment by the [Defendant]." *Id.*, § 6.

Subsequent to the execution of the Agreement, Defendant entered into various Transactions financed by Plaintiff, including those identified on Exhibit B to the Complaint (collectively, the "Indemnified Accounts"). Since that time, Plaintiff has become aware that Defendant has breached its warranties and representations in relation to the Indemnified Accounts by: (i) upgrading and refinancing, through a source other than Plaintiff, the Indemnified Transactions without Plaintiff's knowledge or consent, and (ii) failing to comply with the "Buyout to Keep" and similar provisions, as that terminology is used in section 2(k) of the Agreement, with respect to each of the Indemnified Transactions. *Id.*, § 2(k); *see also, Id.,* Exhibit A.

In addition, Plaintiff is informed and believes that Defendant has taken actions that have caused and/or encouraged the Customers specified as Indemnified Accounts to breach their own contractual obligations to Plaintiff. Such actions include: (i) advising the Customers that Defendant

1 would fulfill Customers' obligations to Plaintiff under such contracts, and/or (ii) advising the
2 Customers that their obligations to Plaintiff were forgiven.
3    As a direct result of encouraging the Customers to refinance and/or upgrade the Equipment
4 subject to the Indemnified Transactions with other lenders or lessors, and after assisting the
5 Customers in such refinancing or upgrading efforts, Defendant received substantial fees,
6 commissions or payments in connection with the transactions between the Customer and the
7 Customers' new lender/lessors – all of which are Plaintiff's competitors.
8    On July 15, 2015, Plaintiff sent a Notice of Demand to Defendant, demanding that Defendant
9 remit not less than $113,751.37 in satisfaction of certain of its indemnification obligations under the
10 Agreement (the "First Notice of Demand").  On October 6, 2015, Plaintiff sent a second Notice of
11 Demand to Defendant, demanding that Defendant remit not less than $363,775.86 in satisfaction of
12 certain other indemnification obligations under the Agreement (the "Second Notice of Demand" and,
13 together with the First Notice of Demand, the "Notices of Demand").  To date, Defendant has failed
14 and refused to cure its defaults under the Agreement or to pay any amounts demanded by the Notices
15 of Demand.
16    Subsequent to filing the Complaint, Plaintiff became aware that Defendant has sold, or soon
17 will sell, its business operations to Morgan.  Plaintiff is further informed and believes that Morgan
18 has also informed the Customers that they need not fulfill their contractual obligations to Plaintiff.
19    As a result of the sale, Defendant has no continuing business operations.  As such, the sole
20 source of recovery of any damages awarded to Plaintiff will be the proceeds of the sale of
21 Defendant's assets to Morgan..  As of the date this litigation was commenced, those damages were
22 not less than $477,527.23.

**Plaintiff's Right to Attachment**

25    Plaintiff has sought a right to attach order and a writ of attachment with respect to the
26 property of Defendant.  Plaintiff's sole purpose in seeking this relief is to ensure that a judgment can
27 be satisfied.  See Janney Declaration, ¶ 16.  The right to attach order and writ of attachment are
28 sought to secure the recovery of a claim upon which an attachment may be issued.  Id., ¶ 17.  The

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

amount sought to be attached is $477,527.23.[1] Id., ¶ 18.  The attachment is not sought for a purpose other than the recovery of a claim upon which attachment is based.  Id., ¶ 19.  Plaintiff possesses no information or belief that Plaintiff's claims have been discharged pursuant to a proceeding under Title 11 of the United States Code or that the prosecution of this action is stayed in a proceeding under Title 11 of the United States Code.  Id., ¶ 20.

## PROPERTY SUBJECT TO ATTACHMENT

The property of Defendant sought to be attached pursuant to the right to attach order and writ of attachment is all corporate property which is subject to attachment pursuant to subdivision (a) of California Code of Civil Procedure Section 487.010, including, but not limited to, all proceeds of sale of Defendant's assets to Morgan, and Plaintiff is informed and believe that such property is subject to attachment.  Id., ¶ 21.

## LEGAL ANALYSIS

### A. Plaintiff Is Entitled to an Attachment Because Defendant Has Expressly Failed to Honor the Terms of the Agreement

Pursuant to FRCP 64, the Court is authorized to utilize the procedures available under California law for seizure of a person or property including writs of attachment.   In California, a writ of attachment "allows a plaintiff, in certain prescribed instances, to obtain a pretrial seizure of the property of a defendant-debtor."  Whitehouse v. Six Corporation, Inc., 40 Cal. App. 4th 527, 533 (1995); Lorber Industries of California v. Turbulence, Inc., 175 Cal. App. 3d 532, 535 (1985) (writ of attachment allows creditor who has established prima facie claim to have debtor's assets seized pending final adjudication).  An attachment secures and ensures that litigation is not pursued in vain or the ends of a successful suit frustrated.  See Loeb & Loeb v. Beverly Glen Music, 156 Cal. App. 3d 1110 (1985).

A right to attach order and writ of attachment can be issued when a qualified claim is "probably valid."  Calif. Code of Civ. Proc. § 484.050(b).  To demonstrate "probable validity," a

---

[1] Plaintiff reserves the right to increase this requested amount in the likely event it identified additional Indemnified Accounts subject reimbursement and/or indemnification from Defendant.

plaintiff need only show it is "more likely than not" that it will obtain a judgment on the underlying claim. Calif. Code of Civ. Proc. § 481.190. In other words, a court has the power to determine disputed facts "on the basis of a *preponderance* of the evidence . . . (unlike summary judgment motions, for example, in which the court has no power to weigh the evidence)." Weil & Brown, California Practice Guide: Civil Procedure Before Trial at 9:947.5 (The Rutter Group 2002) (emphasis in original).

Here, Plaintiff's claim is valid. Although Plaintiff has performed all its obligations under the Agreement, Defendant has failed to perform its obligations under the Agreement by, among other things, failing to indemnify Plaintiff for the damages it has suffered in relation to the Indemnified Accounts. See Janney Declaration, ¶¶ 4-6. Furthermore, Defendant breached the Agreement by causing Plaintiff's Customers to breach their obligations under their financing Transactions with Plaintiff. Id. at ¶ 12. Although Defendant's contractual obligations are clear from the face of the Agreement, Defendant continues to refuse to pay Plaintiff the amount owed. Id., ¶ 10. These undisputed facts demonstrate that a right to attach order and writ of attachment are warranted.

### B.   Plaintiff Fulfills All Procedure Requirements for an Attachment

In addition to Plaintiff's clear probability of success on the merits, Plaintiff fulfills the procedural requirements for an attachment. California Code of Civil Procedure Section 483.010 provides that a court shall issue a right to attach order and writ of attachment if it finds that: (1) the claim is one for money based on an express or implied contract; (2) of a fixed or readily ascertainable amount not less than $500; (3) that is either unsecured or secured by personal property; and (4) that is a commercial claim.

#### i.   Plaintiff's Damages Claims Are Based on Express Contractual Obligations

The Agreement is clear and unambiguous. It expressly provides that Defendant shall pay Plaintiff the amounts due in relation to the Indemnified Accounts. Thus, Plaintiff's claim against

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Defendant is for money and is specifically based on the terms of express agreements. Calif. Code of Civ. Proc. § 483.010(a).

### ii.   Plaintiff's Claims Are for a Readily Ascertainable Amount

Plaintiff's claims are readily ascertainable by reviewing the unambiguous terms of the Agreement. The Agreement expressly provides that Defendant shall indemnify and hold Plaintiff harmless from any damages it sustains in connection with the Indemnified Accounts. As set forth with specificity in the Janney Declaration, the outstanding amount due in relation to those indemnification obligations is not less than $477,527.23. See Janney Declaration, ¶ 7. Since this amount is readily ascertainable, an attachment order is proper. See Stotland v. Mobile Homes Engineering Corp., 197 Cal. App. 2d 815, 816 (1961).

### iii.   Defendant's Debt to Plaintiff is Not Secured by Real Property

An attachment may issue on unsecured claims or claims secured by personal property. Calif. Code of Civ. Proc. § 483.010. Plaintiff's claims against Defendant are unsecured. California Code of Civil Procedure Section 483.015 provides in pertinent part as follows:

(a)   [T]he amount to be secured by an attachment is the sum of the following:

    (1)   The amount of the defendant's indebtedness claimed by the plaintiff.

    (2)   Any additional amount included by the court under Section 482.110 [relating to costs and estimated attorneys' fees].

(b)   The amount described in subdivision (a) shall be reduced by the sum of the following:

* * *

    (4)   The value of any security interest in the property of the defendant held by the plaintiff to secure the defendant's indebtedness claimed by the plaintiff, together with the amount by which the value of the security interest has decreased due to the act of the plaintiff or a prior holder of the security interest.

Accordingly, the amount of the attachment should be set at $477,527.23.

### iv. Plaintiff's Claims Arise From Commercial Contracts

The Agreement is a commercial contract, which relates to the business operations of Defendant and was negotiated at arm's length between corporations. As a result, the Agreement is not a consumer transaction and fulfills the statutory requirements for a writ of attachment. Calif. Code of Civ. Proc. § 483.010(a).

### v. Plaintiff Has Stated the Amount to be Secured and Have a Proper Purpose for the Attachment

In addition to fulfilling the requirements of California Code of Civil Procedure Section 483.010(a), a party seeking an attachment must state the amount to be secured and that the writ is sought only for the purpose of securing recovery on its claim. Calif. Code of Civ. Proc. § 484.020(c). Plaintiff satisfies both requirements.

Plaintiff seeks to secure a total of $477,527.23, an amount that equals the sum due under the terms of the Agreement. Plaintiff has also established that its sole purpose in seeking the writ is to ensure that a judgment can be satisfied. See Janney Declaration, ¶¶ 15-21. Plaintiff has satisfied all other procedural requirements for a right to attach order and writ of attachment. Id.

### vi. The Property Sought to be Attached is Lawfully Subject to Attachment

Finally, a party seeking attachment must (1) describe the property to be attached, and (2) state that the party is informed and believes that the property is subject to attachment. If the defendant is a corporation, a general reference to all corporate property which is subject to attachment is proper pursuant to California Code of Civil Procedure Section 487.010. Calif. Code of Civ. Proc. § 484.020(e).

Defendant is California corporation, and Plaintiff has made reference to all corporate property subject to attachment. See Janney Declaration, ¶ 23. Accordingly, Plaintiff has satisfied all procedural and statutory requirements, and a right to attach order and writ of attachment should be issued.

PLAINTIFF'S MOTION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT AND MEMORANDUM OF POINTS AND AUTHORITIES

**CONCLUSION**

Writs of attachment were designed for precisely this type of action. Defendant has breached its contractual obligations to Plaintiff under the Agreement, and the amount due to Plaintiff is readily ascertainable from those agreements. Plaintiff fulfills all procedural requirements by stating a claim for an ascertainable amount based on an express contract, seeks the attachment for a proper purpose, and seeks an attachment on appropriate property. In order to ensure that funds are available when Plaintiff prevails, a writ of attachment is both authorized and justified here. Accordingly, Plaintiff respectfully requests that this Court grant the application for a right to attach order and writ of attachment.

Dated:  February 22, 2016       REED SMITH LLP


                                By /s/ Jonathan R. Doolittle
                                   Jonathan R. Doolittle
                                   Attorney for Plaintiff
                                   General Electric Capital Corporation

PLAINTIFF'S MOTION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES