UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>RHINO BUSINESS SYSTEMS, INC., a California Corporation,<br><br>Defendant. | No. 2:16-cv-00029-KJM-CMK<br><br><br>ORDER |

On January 5, 2016, plaintiff General Electric Capital Corporation (GE Capital) filed a complaint against defendant Rhino Business Systems, Inc. (Rhino), alleging breach of contract and other related claims. *See generally* Compl., ECF No. 1. Rhino was served with a copy of the complaint and a summons on January 20, 2016, ECF No. 6; to date, Rhino has yet to appear or file any written response to the complaint. On March 3, 2016, GE Capital filed the instant unopposed motion for right to attach order and writ of attachment. ECF No. 7. The court held a hearing on March 25, 2016. Jonathan Doolittle appeared telephonically for GE Capital.

As explained below, the court GRANTS GE Capital's motion for right to attach order and writ of attachment.

/////

I.     BACKGROUND

Rhino is an office equipment broker/dealer operating in Northern California. Compl. ¶ 9. It sells, leases and services office equipment and products. *Id.* On October 20, 2011, GE Capital and Rhino entered into a Strategic Alliance Agreement (Agreement) in which GE Capital agreed, among other things, to provide financing for certain persons or entities (Customers) that intended to purchase or lease office equipment from Rhino. Each arrangement with a Customer is referred to here as a Transaction. *Id.* ¶¶ 10–11; ECF No. 1-1 at 2,[1] Ex. A; Janney Decl. ¶ 4, ECF No. 7-2.

As provided by Section 4 of the Agreement, Rhino represented and warranted, in relevant part, the following with respect to each Transaction:

> . . . neither [Rhino] nor any of its employees or agents is aware of (1) any fact or circumstance that would reasonably have a negative impact on that Transaction, the Equipment or the financial condition or business of the applicable Customer, or (2) any fraudulent activity on the part of the applicable Customer in connection with the Transaction or the Equipment; (d) neither [Rhino] nor any of its employees or agents has committed any fraudulent act nor participated in any fraudulent or improper activity in connection with the applicable Customer or that Transaction; (e) GE [Capital] will have good and marketable title to, or a valid security interest in, the Equipment, free and clear of all liens, claims, security interests and encumbrances, except for the interests of the Customer and for those arising by or through GE . . . .

ECF No. 1-1 at 4, Ex. A. In addition, Rhino also warranted as to each Transaction that it would "not exchange or accept the return of the Equipment or amend, release or discharge any Customer obligation under the Transaction without [GE Capital's] prior written consent." *Id.,* Ex. A at 1.

Under Section 6 of the Agreement, Rhino agreed to:

> . . . [I]ndemnify and hold harmless GE [Capital] and its affiliates, subsidiaries, employees, officers, directors, attorneys and agents, from and against any and all losses, claims by or against GE [Capital], liabilities (including negligence, tort and strict liabilities), demands and expenses whatsoever, including reasonable attorney's fees and costs, arising out of or in connection with (1) any breach by [Rhino] of any of its representations or warranties hereunder,

---

[1] Pin citations in this document refer to page numbers printed by the CM/ECF system at the top right corner of each page.

2

> (2) the failure of [Rhino] to perform duly and punctually any of its covenants, agreements or obligations hereunder or under any Transaction document, or (3) the sale, delivery, installation, use, possession, servicing, maintenance or disposal of the Equipment by [Rhino].  Dealer will have no obligation to indemnify GE [Capital] for any action or omission to act that a court of competent jurisdiction finally determines constitutes gross negligence or willful misconduct on the part of GE [Capital] . . . .

*Id.*, Ex. A at 3–4.

After executing the Agreement, Rhino entered into various Transactions financed by GE Capital, including but not limited to those identified in Exhibit B attached to the Complaint (collectively, the "Indemnified Accounts").  Compl. ¶ 15; ECF No. 1-2 at 2, Ex. B.  Rhino has since allegedly breached its warranties and representations with respect to the Indemnified Accounts, including, without limitation, by: (1) upgrading and refinancing the Transactions through a source other than GE Capital without GE Capital's knowledge or consent, and (2) failing to comply with the "Buyout to Keep" and similar provisions, as that terminology is used in section 2(k) of the Agreement regarding each Transaction.  Compl. ¶ 16; *see also* ECF No. 1-1 at 4, Ex. A; Janney Decl. ¶ 5.

Rhino also allegedly has taken actions that have caused or encouraged Customers with Indemnified Accounts to breach their own contractual obligations to GE Capital.  Such actions include: (1) advising the Customers that Rhino would fulfill Customers' obligations to GE Capital under their contracts, and/or (2) advising Customers their obligations to GE Capital were forgiven.  Compl. ¶ 17; Janney Decl. ¶ 6.

On July 15, 2015, GE Capital sent a Notice of Demand (July Notice) to Rhino, requesting that Rhino pay $113,751.37 to repurchase the Transactions identified in the July Notice, and satisfy its obligation to indemnify and hold GE Capital harmless.  ECF No. 1-3 at 2, Ex. C.  On October 6, 2015, GE Capital sent a second Notice of Demand (October Notice), making a similar request to Rhino with another list of Transactions, this time totaling $363,775.86.  ECF No. 1-4, Ex. D.  Altogether, as a result of Rhino's breach, GE Capital alleges it suffered no less than $477,527 in damages.  Compl. ¶ 30.  To date, Rhino has yet to cure its defaults under the Agreement or pay the amounts requested under either the July or October

3

1 Notice. *Id.* ¶ 21. GE Capital alleges that at all times it has fulfilled its obligations under the
2 Agreement. *Id.* ¶ 22.
3 Recently, GE Capital received information suggesting Rhino has sold, or intends
4 to sell substantially all its assets to Ray Morgan RMC, Inc. (Morgan). GE Capital believes
5 Morgan has instructed certain Customers they will not need to satisfy their obligations to GE
6 Capital. Janney Decl. ¶ 12.

7 II.     LEGAL STANDARD
8 Federal Rule of Civil Procedure 64 provides in pertinent part:

> At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought, subject to [certain] qualifications . . . .  The remedies thus available include . . . attachment . . . .

Fed. R. Civ. P. 64. The effect of Rule 64 is to incorporate state law to determine the availability of prejudgment remedies, including among them the seizure of property to secure satisfaction of a judgment ultimately entered. *Granny Goose Foods Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70 of Alameda Co.*, 415 U.S. 423, 436 n.10 (1974).

The burden is on the moving party to establish grounds for an order of attachment. *Loeb and Loeb v. Beverly Glen Music, Inc.,* 166 Cal. App. 3d 1110, 1116 (1985); *see also* Legislative Committee Comment to 1974 Addition to California Code of Civil Procedure § 484.090 (stating "plaintiff has the burden of proving (1) that his claim is one upon which an attachment may be issued, and (2) the probable validity of such claim."). Attachment is a purely statutory remedy, which is subject to strict construction. *Jordan–Lyon Productions, Ltd. v. Cineplex Odeon Corp.*, 29 Cal. App. 4th 1459, 1466 (1994).

In California, the procedures and grounds for obtaining orders permitting prejudgment writs of attachment are governed by the California Code of Civil Procedure, section 481.010 *et seq.* Generally, an order of attachment may be issued only in an action for a claim of
/////

money based on an express or implied contract where the total amount of such claim is a fixed or "readily ascertainable" amount not less than $500.00. Cal. Code Civ. Proc. § 483.010(a).

California Code of Civil Procedure § 484.090 provides that before an attachment order is issued, the court must find all of the following: (1) The claim upon which the attachment is based is one upon which an attachment may be issued; (2) the applicant has established "the probable validity" of the claim upon which the attachment is based; (3) the attachment is not sought for a purpose other than recovery on the claim upon which the request for attachment is based; and (4) the amount to be secured by the attachment is greater than zero. Cal. Code Civ. Proc. § 484.090(a). In order to establish the "probable validity" prong of the attachment statute, the applicant must show it is more likely than not it will obtain a judgment against the defendant on its claim. Cal. Code Civ. Proc. § 481.190; *see also Pos–A–Traction, Inc. v. Kelly-Springfield Tire Co.*, 112 F. Supp. 2d 1178, 1182 (C.D. Cal. 2000). In addition to the four factors above, the description of the property to be attached must be "reasonably adequate to permit the defendant to identify the property sought to be attached." Cal. Code Civ. Proc. § 484.020(e). And lastly, a writ of attachment will not be issued if the property to be attached is exempt. *See* Cal. Code Civ. Proc. § 484.090(b); *id.* § 487.020[2]

The application for a right to attach order must be supported by an affidavit or declaration showing that the applicant, on the facts presented, would be entitled to a judgment on the claim upon which the proposed attachment is based. Cal. Code Civ. Proc. § 484.030. The affidavit or declaration must state the facts "with particularity." Cal. Code Civ. Proc. § 482.040. Here, GE Capital has provided the affidavit of Anthony Janney in support of the motion. *See generally* Janney Decl. Janney, as the litigation specialist for GE Capital, is in charge of the loans to and accounts of Rhino and its Customers. Janney Decl. ¶¶ 1, 3.

/////

/////

---

[2] Section 487.020 exempts the following from attachment, (a) all property exempt from enforcement of a monetary judgment, (b) property necessary for the support of a defendant who is a natural person, (c) earnings comprising compensation paid by an employer to an employee, and (d) properties not subject to attachment under § 487.010.

III. RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

In an order to attach or an order of attachment of the defendant-debtor's assets, the plaintiff-creditor seeks both a right to attach order and a writ of attachment in a single application. Cal. Code. Civ. Proc. § 484.010. As noted above, the right to attach order may issue if the claim is one that can support issuance of writ of attachment. The writ of attachment, however, is not issued until the court determines the property the plaintiff seeks to attach is not exempt. Cal. Code Civ. Proc. §§ 484.010–484.110. The analysis applicable to a right to attach order and a writ of attachment are essentially the same, as reflected below.

A. The Claim Supporting Attachment

In determining whether or not to issue a right to attach order, the court first looks at whether the claim upon which the attachment request is based is one upon which an attachment may in fact be issued. Under California law, an attachment order may be issued only if the claim sued upon is (1) a claim "for money . . . based upon a contract, express or implied," (2) of a "fixed or readily ascertainable amount not less than $500," (3) which is either unsecured or secured by personal property, and (4) is a "commercial claim." Cal. Code Civ. Proc. § 483.010; *see also Douglas v. Smith*, No. 09-1365, 2010 WL 1734903, at *1 (C.D. Cal. Apr. 28, 2010).

1. Money Based on a Contract

Here, the claim is based on an express contract, the Agreement between GE Capital and Rhino whereby GE Capital agreed to provide financing for certain Customers' Transactions. Compl. ¶¶ 10–11; ECF No. 1-1 at 2, Ex. A. GE Capital alleges Rhino subsequently breached the warranties and representations in the Agreement. Compl. ¶ 16. As a result, GE Capital now seeks a writ of attachment in the amount of $477,527.23, the "Buyout to Keep" cost associated with all Customers with Indemnified Accounts, with the writ filed against all non-exempt assets of Rhino. Compl. ¶ 30; Mot. at 5; Janney Decl. ¶¶ 18, 22. Specifically, GE Capital seeks to attach corporate property including, but not limited to, all proceeds from any sale of Rhino's assets to Morgan. Janney Decl. ¶ 21.

2. <u>Fixed or Readily Ascertainable Amount</u>

California courts have long held that where an attachment is based on damages for a breach of contract, the damages need to be readily ascertainable by reference to the contract and the basis of the computation of damages needs to appear reasonable and definite. *CIT Group/Equip. Fin., Inc. v. Super DVD, Inc.*, 115 Cal. App. 4th 537, 540 (2004); *Force v. Hart*, 205 Cal. 670, 672–73 (1928). The contract at issue must furnish a standard by which the amount due can be ascertained, and a basis upon which the damages can be determined with proof. *Force*, 205 Cal. at 673; *CIT Group*, 115 Cal. App. 4th at 540. However, the amount owed does not necessarily have to appear on the face of the contract. *CIT Group*, 115 Cal. App. 4th at 540.

Here, Exhibit A attached to the Agreement provides the calculation for the "Buyout to Keep" amount, ECF No. 1-1 at 7, Ex. A, and Exhibit B to the complaint identifies the Customers with Indemnified Accounts and their total outstanding balances, ECF No. 1-2 at 2, Ex. B. The calculation represents the sum of (1) the remaining cash flow of all unpaid rental payments (whether due now or later), including all renewal payments, (2) the in-place fair market value of the Equipment (as determined by GE Capital), (3) sales tax (if applicable), (4) billed and/or estimated property tax (if applicable), (5) all other amounts due from the Customer to GE Capital under the applicable Transaction documents, including late charges, insurance and collection costs, and (6) credit from security deposit (if applicable). ECF No. 1-1 at 7, Ex. A. Although the Agreement does not identify specific numbers leading to the sums, the calculation to determine what is owed is straightforward. *See Travelers Cas. and Sur. Co. of America v. J.K. Merz Const., Inc.*, No. 07-770, 2007 WL 4468680, at *7 (N.D. Cal. Dec. 17, 2007) (citing *CIT Group*, 115 Cal. App. 4th at 540; *Force*, 205 Cal. at 673).

3. <u>Unsecured or Secured by Personal Property</u>

A plaintiff who obtained security for an obligation has no right to attachment if the security has not become valueless after it was given. *Bowles v. Pacific Commissary Co.*, 199 Cal. App. 2d 438, 442–43 (1962). Here, section 4(e) of the Agreement provides, "GE [Capital] will have good and marketable title to, or a valid security interest in, the Equipment, free and clear of all liens, claims, security interests and encumbrances, except for the interests of the Customer

7

. . ." ECF No. 1-1 at 4, Ex. A. While GE Capital's briefing does not clarify whether it obtained security interests, *see* Mot. at 8, counsel's response to the court's questions at hearing indicated GE Capital does not have secured interests. Thus, its unsecured interests are eligible for protection through attachment proceedings.

### 4. Commercial Claim

The claim against Rhino is not one against an individual; thus, section 484.010(c)'s requirement of a commercial claim does not apply in this case.

## B. Probable Validity

A claim has "probable validity" where "it is more likely than not that the plaintiff will obtain a judgment against the defendant on the claim." Cal. Code Civ. Proc. § 481.190. This means that plaintiff must establish a prima facie case. *Plata v. Darbun Enter., Inc.*, No. 09-44, 2009 WL 3153747, at *4 (S.D. Cal. Sept. 23, 2009). If defendant opposes the application, "the court must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation." *Loeb & Loeb*, 166 Cal. App. 3d at 1120. Where defendant, as here, has not appeared, GE Capital still must demonstrate it will more likely than not prevail on its breach of contract claim. *See* Cal. Code Civ. Proc. § 481.190; *see also Walter v. Newberry*, No. 06-05396, 2006 WL 3201042, at *1 (N.D. Cal. 2006) (plaintiffs must show probable validity to their claim even where defendants have not opposed the attachment or appeared in the case). Under California law, to establish a prima facie case for a breach of contract, GE Capital must show (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff. *Walsh v. West Valley Mission Cmty. College Dist.*, 66 Cal. App. 4th 1532, 1545 (1998).

For the purpose of this motion, GE Capital has established there is a contract between GE Capital and Rhino. Compl. ¶¶ 10–11; ECF No. 1-1 at 2, Ex. A; Janney Decl. ¶ 4. Second, GE Capital performed by financing the Transactions Rhino entered into based on the Agreement. Compl. ¶ 15; ECF No. 1-2 at 2, Ex. B. Third, Rhino subsequently breached the warranties and representations contained in the Agreement by upgrading and financing certain transactions through a source other than GE Capital, failing to comply with the "Buyout to Keep"

and other similar provisions, and encouraging Customers to breach their own contractual obligations with GE Capital. Compl. ¶ 16; ECF No. 1-1 at 4, Ex. A; Janney Decl. ¶¶ 5–6. Fourth, Rhino's breach of the Agreement resulted in damages in the amount of $477,527.23 to GE Capital.

Accordingly, GE Capital has established a prima facie case for a breach of contract, and has demonstrated it will more likely than not prevail on its breach of contract claim.

### C. Purpose of Recovery

The attachment is sought for the sole purpose of preserving GE Capital's right to recover its damages as a result of Rhino's alleged breach of the Agreement, and not for anything other than that claim. Janney Decl. ¶ 22.

### D. Greater Than Zero

GE Capital's submissions establish that the amount to be secured is greater than zero.

### E. Reasonably Adequate Description of the Property to be Attached

As noted, the description of the property to be attached must be "reasonably adequate to permit the defendant to identify the property sought to be attached." Cal. Code Civ. Proc. § 484.020(e). The purpose of this requirement is to enable an individual defendant to determine whether to file a claim of exemption. *Bank of America v. Salinas Nissan, Inc.*, 207 Cal. App. 3d 260, 268 (1989). For a corporate defendant, section 484.020(e) allows an attachment application to simply request attachment of "all corporate property which is subject to attachment." Cal. Code Civ. Proc. § 484.020).

Here, Rhino is a corporate defendant, and GE Capital seeks to attach all proceeds from the sale of Rhino's assets to Morgan. GE Capital has provided a reasonably adequate description of the property to be attached.

### F. Not Exempt

A defendant bears the burden of proving that the property is exempt. Cal. Code Civ. Proc. §§ 484.020, 484.070; *see also Douglas v. Smith*, No. 09-1365, 2010 WL 1734903, at *6 (C.D. Cal. Apr. 28, 2010). The motion here is unopposed and *ipso facto* the burden is not met.

1  *Salinas Nissan, Inc.*, 207 Cal. App. 3d at 269–70 (defendant waived exemption claims not asserted at the noticed hearing.)

IV.   CONCLUSION

GE Capital's application for a right to attach order and writ of attachment against Rhino (ECF No. 7) is GRANTED in the amount of $477,527.23 against the sale proceeds of Rhino's assets to Morgan.

IT IS SO ORDERED.

DATED: May 10, 2016.

_____
UNITED STATES DISTRICT JUDGE